812 F.2d 1402
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Appellee,
v.
Nation Edward MEYER, a/k/a "Stryker", Appellant.
 No. 85-5263.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 11, 1986.
Decided Feb. 23, 1987.
 
 1
 Before RUSSELL and HALL, Circuit Judges, and HENDERSON, United States District Judge for the District of South Carolina, sitting by designation.
 
 
 2
 William James Murphy (Murphy & McDaniel, on brief), for appellant.
 
 
 3
 Charles P. Scheeler, Assistant United States Attorney (Breckinridge L. Wilcox, United States Attorney, on brief), for appellee.
 
 HENDERSON, District Judge:
 
 4
 The appellant Nation Edward Meyer was convicted by a jury of conspiracy and interstate transportation of stolen securities in violation of 18 U.S.C. Secs. 371 and 2314. Meyer raises two issues on appeal: (1) whether the lower court violated Meyer's right under the Confrontation Clause of the Sixth Amendment to the United States Constitution by admitting into evidence tape-recorded conversations between Meyer and an absent witness; and (2) whether improper remarks in the prosecutor's closing argument violated Meyer's right to a fair trial. Because we find no reversible error in the district court's rulings on either issue, we affirm.
 
 
 5
 The offense involved a scheme by several co-defendants to sell stolen municipal bearer bonds. On May 10, 1984, Richard Elliott was arrested in Baltimore for transferring stolen bonds worth approximately $51,000 to an undercover FBI agent. Meyer was implicated in the scheme when Elliott, following his arrest, agreed to cooperate with the FBI by placing a telephone call to his associate in California, whom he identified as Meyer.
 
 
 6
 Elliott made two telephone calls to Meyer on May 10, 1984. Elliott and FBI Special Agent Robert Allen had discussed in advance the questions Elliott was to ask Meyer. Special Agent Allen taped the calls and witnessed Elliott's end of the conversations. At trial Special Agent Allen verified the tapes as accurate recordings of the conversations he had taped and witnessed. The tapes were admitted into evidence over Meyer's objection and played for the jury.
 
 
 7
 In these conversations, Meyer stated he was waiting for a call from another person identified as "Paul." Meyer and Elliott discussed the sale of a "50 horsepower ... car." Meyer further stated that, if Elliott's "thing does not happen," Meyer's head would be in a noose if he didn't get "the 51" back.
 
 I.
 
 8
 On appeal Meyer contends the tapes were erroneously admitted into evidence, first, because they were inadmissible hearsay and, second, because they violated Meyer's Confrontation Clause right. At trial, Meyer objected to the admission of the tapes on the ground that the content of the tapes was hearsay. Meyer's counsel conceded at oral argument, however, that Meyer's statements constitute a party admission under Rule 801(d)(2) of the Federal Rules of Evidence. Therefore, the sole issue before this Court is whether Elliott's recorded statements were admissible.
 
 
 9
 As the transcript of the tapes reveals, the conversations between Meyer and Elliott were couched in cryptic terms; without Elliott's statements Meyer's admissions are unintelligible. It is, however, to Meyer's, not Elliott's, statements that we look for the former's admission of involvement in the bond scheme. Because Elliott's statements serve merely to give context to Meyer's words, they are not offered for the truth of the matter contained and, thus, are not hearsay under Rule 801(c) of the Federal Rules of Evidence. United States v. Leake, 642 F.2d 715, 720 n. 6 (4th Cir.1981).
 
 
 10
 Meyer asserts on appeal that even if the tapes were properly admitted under Rule 801(c) and (d)(2) of the Federal Rules of Evidence, the trial court erred in failing to give a limiting instruction that Elliott's statements were not being offered for the truth of their content. The record reveals, however, that defense counsel failed to request such a limiting instruction. Absent plain or fundamental error, we need not consider on appeal legal points that were available to the appellant but not presented for the district court's consideration. United States v. Seidlitz, 589 F.2d 152, 160 (4th Cir.1978), cert. denied, 441 U.S. 922 (1979). We find, moreover, that any error was harmless in view of the fact the essential admissions were made by Meyer himself.
 
 
 11
 Meyer further contends that admission of Elliott's recorded statements into evidence constituted a violation of Meyer's right under the Confrontation Clause of the Sixth Amendment. The seminal case on this issue is Bruton v. United States, 391 U.S. 123 (1968), which held that the extrajudicial confession of a co-defendant inculpating a second defendant was inadmissible because it violated the second defendant's Confrontation Clause right where the co-defendant did not testify at their joint trial.
 
 
 12
 The right of confrontation, however, is not absolute. See Harrington v. California, 395 U.S. 250 (1969) (requiring a Bruton violation be harmless beyond a reasonable doubt to constitute reversible error). Indeed, this Court has held that Bruton does not apply where the statement of a non-testifying co-defendant made in the presence of a second defendant is admissible against the second defendant as an adoptive admission of guilt under the Federal Rules of Evidence. Folston v. Allsbrook, 691 F.2d 184, 187 (4th Cir.1982), cert. denied, 461 U.S. 939 (1983). In Folston the Court found that the second defendant's "silence under the circumstances clearly is an implied admission which renders the statement admissible against him." Id. Here, the challenged evidence involves potentially less prejudice to the defendant inasmuch of the admissions were affirmatively made by the defendant Meyer himself. Therefore, we find that Elliott's recorded statements were properly admitted into evidence.
 
 II.
 
 13
 During closing argument defense counsel hypothesized that the original owner of the bonds, Robert Ellison, may have known who had possession of the stolen bonds. The prosecution, apparently interpreting this assertion to mean that Meyer, in attempting to retrieve the bonds, was acting as a "white knight" for Ellison, argued in rebuttal:
 
 
 14
 And, of course, the defendant has no burden of producing any witnesses but, if Mr. Meyer were a white knight for Mr. Ellison wouldn't it [have] been easy enough for Mr. Ellison to come in here and testify....
 
 
 15
 At that point defense counsel objected and requested a mistrial. The lower court agreed the prosecutor's argument was "impermissible" but denied the request for mistrial. The court then stated it would instruct the jury to disregard the improper argument, but would do so only if, at the same time, its instruction included an admonition regarding an earlier argument by defense counsel the court viewed as equally impermissible. Defense counsel refused to agree that the curative instruction should include a reference to his earlier argument, particularly since the government had not objected at the time.
 
 
 16
 After an extended bench conference, defense counsel withdrew the motion for mistrial without reservation. With the agreement of both counsel, the lower court then told the jury the lengthy interruption of the government's rebuttal argument had been caused by a need to discuss certain unresolved aspects of the charge to the jury.
 
 
 17
 Meyer asserts on appeal the "missing witness" argument deprived him of his right to a fair trial. On review of the record, however, we find the issue was not fairly before the trial court. Defense counsel unequivocally withdrew the motion for mistrial without reservation. Such a motion is necessary to preserve error on appeal where, as here, the error is not plain or fundamental. Seidlitz, 589 F.2d at 160. See United States v. Hasting, 461 U.S. 499, 508-11 (1983) (the appellate court must examine the prosecution's improper comment in light of the harmless error rule, that is, whether absent the prosecutor's allusion to the failure of the defense to proffer certain evidence, it is clear beyond a reasonable doubt the jury would have returned a verdict of guilty). Moreover, even assuming the error was properly presented on appeal, it was harmless in view of the district court's detailed instruction to the jury as to the prosecution's burden of proof and the absence of any duty on the defendant's part to call witnesses or produce evidence.
 
 
 18
 AFFIRMED.